**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
December 2, 2013

No. 12-11053

Lyle W. Cayce
Clerk

AMADO MENDOZA,

Plaintiff – Appellant

v.

BELL HELICOPTER,

Defendant – Appellee

Appeal from the United States District Court
for the Northern District of Texas.
USDC No. 4:10-CV-603

Before JOLLY, DeMOSS, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Amado Mendoza appeals the district court's grant of summary judgment for the defendant Bell Helicopter. For the reasons stated below, we affirm.

## BACKGROUND

We are writing exclusively for the parties who are aware of the evidence in this case. Therefore an exhaustive factual summary is unnecessary. In short, Amado Mendoza ("Mendoza"), a United States citizen of Hispanic descent, began working as a tool and die maker at Bell Helicopter ("Bell") in 2005. He alleged

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-11053

that starting in 2005 he endured race-based comments.  He also asserts that he was subjected to other mistreatment including exposure to race-based flyers and unfair job assignments.  Mendoza alleges that after he began complaining of the race discrimination in 2008, he was retaliated against.  At the time of oral argument, Mendoza was still employed by Bell.

On August 23, 2010, Mendoza sued Bell and Textron, Inc. asserting a race discrimination claim based on a hostile work environment theory and a retaliation claim under 42 U.S.C. § 1981 and Chapter 21 of the Texas Labor Code.   Mendoza voluntarily dismissed his claims against Textron, Inc. Thereafter, the district court granted summary judgment for Bell on both the race discrimination and retaliation claims.   Mendoza appealed the district court's grant of summary judgment.

## ANALYSIS

"We review the grant of summary judgment *de novo*, applying the same standards as the district court." *Hill v. Carroll Cnty., Miss.*, 587 F.3d 230, 233 (5th Cir. 2009).  "The Court affirms if there is no genuine issue of material fact and one party is entitled to prevail as a matter of law." *Keen v. Miller Envtl. Grp., Inc.*, 702 F.3d 239, 243 (5th Cir. 2012) (internal quotation marks and citations omitted).

In his brief, Mendoza mentions Title VII claims.  Because Mendoza did not raise any Title VII claims in the district court, we disregard Mendoza's arguments concerning any purported violations of Title VII.  *See AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700 (5th Cir. 2009).  Furthermore, Mendoza fails to meaningfully address his Texas Labor Code claims on appeal, therefore we consider those claims waived.  *Procter & Gamble Co. v. Amway Corp.*, 376 F.3d

No. 12-11053

496, 499 n.1 (5th Cir. 2004).  Accordingly, we consider only Mendoza's race discrimination and retaliation claims under 42 U.S.C. § 1981.

Although this is a 42 U.S.C. § 1981 case, "[c]laims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII." *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n.2 (5th Cir. 1996).  Therefore, it is appropriate to rely on Title VII cases, and the *McDonnell Douglas* evidentiary framework applies.  *Id.* at 448 & n.2; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

## A.     Hostile Work Environment

Mendoza argues that the district court erred in finding that he had not made a prima facie case of race discrimination based on a hostile work environment theory.  Generally, to establish a prima facie case of a hostile work environment  a plaintiff must show:

> (1) [He] belongs to a protected group; (2) [he] was subjected to unwelcomed harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; [and] (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

In *Harris v. Forklift Systems, Inc.*, the Supreme Court stated that Title VII prohibits "requiring people to work in a discriminatorily hostile or abusive environment."  510 U.S. 17, 21 (1993).  "When the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

3

No. 12-11053

abusive working environment, Title VII is violated." *Id.* (internal quotation marks and citations omitted).

> For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, the conduct complained of must be both objectively and subjectively offensive. Thus, not only must the victim perceive the environment as hostile, the conduct must also be such that a reasonable person would find it to be hostile or abusive. To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. No single factor is determinative.

*E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 399 (5th Cir. 2007) (internal citations omitted).

Importantly, "[u]nder the totality of the circumstances test, a single incident of harassment, if sufficiently severe, could give rise to a viable Title VII claim as well as a continuous pattern of much less severe incidents of harassment." *Id.* at 400. "'A recurring point in [Supreme Court] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.'" *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999) (quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 788 (1998) (alteration in original)).

After reviewing the conduct raised by Mendoza in his brief, we agree with the district court that Mendoza has not demonstrated that there is a fact issue on whether the complained of conduct was sufficiently severe or pervasive to create a hostile work environment. Importantly, the complained of conduct

occurred sporadically over a several year period and cannot accurately be described as pervasive.  Additionally, no single incident was severe enough to independently support a hostile work environment claim.  Mendoza failed to establish a prima facie case of race discrimination under a hostile work environment theory.

## B.    Retaliation

Mendoza argues that the district court erred in finding that he had not presented a prima facie case of retaliation.  As with Mendoza's discrimination claim, the law regarding his § 1981 retaliation claim tracks the Title VII jurisprudence.  *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 n.8  (5th Cir. 2003).  "The elements of [Mendoza's] *prima facie* evidentiary showing are 1) that [h]e engaged in a protected activity; 2) that an adverse employment action occurred; and 3) that a causal link existed between the protected activity and the adverse action." *Septimus v. Univ. of Houston*, 399 F.3d 601, 610 (5th Cir. 2005).

We will focus on the second prong, whether an adverse employment action occurred.  Mendoza is correct that the district court was mistaken regarding the appropriate standard for "adverse employment action" in the retaliation context. The district court overlooked the fact that in *Burlington Northern and Santa Fe Railway Co. v. White*, the Supreme Court rejected the approach which "limited actionable retaliation to so-called ultimate employment decisions . . . such as hiring, granting leave, discharging, promoting and compensating." 548 U.S. 53, 60, 67 (2006) (internal quotation marks and citations omitted).   Instead, the Supreme Court held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or

No. 12-11053

supporting a charge of discrimination." *Id*. at 68 (internal quotation marks and citations omitted). The Supreme Court observed four things about this standard. First, it emphasized the need "to separate significant from trivial harms" and warned that "normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id*. (citations omitted). Second, it is an objective standard. *Id*. at 68-69. Third, "[c]ontext matters. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed." *Id*. at 69 (internal quotation marks and citations omitted). Fourth, "the standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint." *Id*.

We now consider whether Mendoza has demonstrated that he suffered an adverse employment action under *White*. Mendoza bases his retaliation claim primarily upon conduct he identifies as "bogus discipline." Specifically, Mendoza was verbally counseled at least three times for taking too long on assignments and once for riding an electric buggy at work. In the context of this case, we find that those verbal counselings would not have dissuaded a reasonable employee from making or supporting a charge of discrimination. Mendoza also received a written warning for making fun of a co-worker's weight after Mendoza complained of that co-worker's behavior towards Mendoza. Mendoza does not dispute that he made fun of his co-worker's weight. On the facts of this case, we find that the written warning Mendoza received for making fun of his co-worker's weight would not have dissuaded a reasonable employee from making or supporting a charge of discrimination.

No. 12-11053

Finally, Mendoza complains that if he talked to Caucasian co-workers, the "lead man" would tell Mendoza or the entire group to get back to work, but that the lead man would instead join the conversation if it was only a group of Caucasian workers talking. The evidence cited in support of this argument is extremely vague. It does not indicate how many times this occurred, the dates it occurred, or whether the other employees were similarly situated to Mendoza with regard to their previous histories of making or supporting claims of discrimination. These "[c]onclusory allegations unsupported by specific facts . . . will not prevent an award of summary judgment." *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001) (internal quotation marks and citations omitted).

Ultimately, we find that Mendoza has failed to establish a prima facie case of retaliation.

## CONCLUSION

Amado Mendoza failed to establish a prima facie case of race discrimination under a hostile work environment theory. Furthermore, he failed to establish a prima facie case of retaliation. Therefore, the district court did not err in granting summary judgment for Bell Helicopter.

AFFIRMED.

7